Good morning, Your Honor. Thank you. I'd like to reserve two minutes for rebuttal. May it please the Court, Thomas R. Rodrigo for the petitioner. I.J. denies the petitioner's case by stereotyping certain factors to insulate an adverse credibility finding. On page 63, third paragraph, lines 2-4, and on page 64, first paragraph, lines 1-4, the first factor she looks at is that the petitioner testified inconsistently to the dates of her forced abortion. This is on page 96, lines 20-25, and on page 97, lines 1-25, and page 98, lines 1-7. And basically, the petitioner testified, first, her abortion happened in February 11, 2011, then says 2013, then the judge asked her, 2013, she then corrects herself and says 2003. Under such, her reholder, 590, fed 3rd, 1034, 1041, and 1042, and 9th Circuit, 2010, in evaluating inconsistencies, I.J. should consider the petitioner's explanation. And here, the immigration judge in her decision on page 63, last paragraph, lines 2-4, and page 64, first paragraph, lines 1-4, I.J. states that she testified that her forced abortion happened on these different dates. The BIA said that she wasn't given an opportunity to explain that inconsistency, and so it didn't consider it. Am I right on that? Correct, and that's where I was going to argue and say pretty much that, you know, who's in the better position to know if this inconsistency is going to be used in the decision to deny the petitioner's case? The judge who can say, hey, I want to hear an explanation, a plausible explanation, or the attorney who doesn't know that this is going to be used as an inconsistency and learns of it when the decision is being written. Well, this is kind of, I kind of wonder whether the BIA was even correct on that, because this is not an inconsistency that needs to be called out, you know, to be explained. It's so obvious that she was all over the map on the years that I don't see why we would apply a sign that says, well, you have to formally ask for the explanation. Why isn't it just apparent she needs to give an explanation for being, I mean, throwing out years that are 10 years apart? I agree, but here's the point. However, if the judge, some judges, as she said in her decision, she said some, sometimes people who make mistakes on dates, it's trivial. So, and so if sometimes your judges won't use this. Can I ask you, who are we reviewing here for the inconsistencies? Am I wrong to assume that it's only the inconsistencies that the BIA specifically relied on? And in response to Judge Collins' earlier question, the BIA did not focus on that. If I understood it correctly, they focused on two things. One is the issue of the certificate that they presented, the certificate, and her testimony as to when she had this forced checkup. Okay, so that's moving on to a different issue, which they're focusing on the premarital checkup. And that goes into my next issue is pretty much, the judge says she was inconsistent as what she testified to her premarital checkup. Initially, she claimed that such checkups were required to obtain a marriage license. When confronted with this contradiction by the department, she began to cry. And given the opportunity to explain her statement, she asked for the question to be repeated. She then took several long breaths and a long pause and asked for the question to be repeated again and admitted she had contradicted herself. And the petition then explains that she underwent the checkup voluntarily and she misremembered because it is so long ago. Well, under the Rule of Reason, under the REAL ID Act, there's a Rule of Reason. And then the Rule of Reason analyst must take into account the totality of the circumstances and should recognize that the normal limits of a human understanding and memory may make some inconsistencies or lack of recall in any witness's case. Quoting the House Representative Notes 109-72 at page 167, 2005, REAL ID Act, Section 101A3, 2005, citing Cessner v. Holder 595-1034 at 1045. So, you know, this is 12 years ago. We're talking 2015. She had the, you know, she's trying to recall, and she was nervous, she said. And she says that, I'm nervous today. Hear the petitioner across. She says that. And then... Well, may I ask, was that an issue that you raised to the board? When you appealed to the board, did you say that it was improper to rely on that inconsistency in particular? Yes, because of the fact that if you looked at her previous testimony, which was on page, I'll tell you right now, on page 132, lines 20, she says, I don't know whether what you're saying is true because the government counsel says it didn't the Chinese government do away with this premarital checkup in 2003. Well, if you look at when she actually had her premarital checkup, I believe on page 132, lines 6-20, and page 101, lines 15-18, she had her premarital checkup done in January of 2003. So either she didn't know of the change, and so when she was responding, she said, I don't know. I don't know what you're saying is true and correct. Or the government... Does the record reveal when that change occurred in 2003? That's exactly what I was going to say next. The government never reveals when that change happened in 2003. So here's a person who had it done, the premarital checkup in January of 2003. So she could have not known of it, or it didn't happen yet. So why are you going to use this to sustain her lack of credibility? Because she even says, I don't know what you're saying is true. And then she even goes on to say, hey, I think this is a requirement for health reasons, for both parties to get checked up in order to get the license to make sure everybody's healthy. But she never states exactly that this is a requirement from the government. And here's the problem with this. They don't accept this answer. The government doesn't accept this answer, nor does the judge. So then they keep on asking her and asking her, and then she starts getting emotional. And then she breaks down and cries. And then she takes a sigh, and then the government attorney keeps on asking her. And not a clear answer. Could I ask you, it strikes me that the government's question was misleading. The government, as you indicated, said that they changed the policy, changed to make it voluntary in 2003, when in fact at the time, the day that she said she had it, it was still compulsory. And so it struck me that if in fact it's so, that the government's question was what was misleading her and leading her into crying and ultimately giving the answer that she gave. And that troubles me. I think what Judge Miller was asking, is there anything in the record that indicates when this policy in China became voluntary in 2003? There's no documentation. I checked the whole entire record. There's no documentation submitted by the government counsel. And there's no reference to when it happened at all. She just made the statement, the government counsel, and pretty much kept on asking the same question as you just pointed out. So there's no reference point. Correct. Do you want to reserve the rest of your time? Yes. Thank you. Thank you. We'll hear from the government. Good morning, Your Honors. Raya Tarawan on behalf of the Attorney General. This immigration matter does involve just one question. Does the record compel the conclusion that the petitioner is credible? And the government's position is that it does not compel the conclusion that the petitioner is credible. The adverse credibility determination here is supported by three factual findings, and they meet the substantial evidence standard. First, as regards to the premarital checkup, to counsel's point, she did testify that it was mandatory. Now, we don't have evidence. Did the government counsel, did the DHS counsel have a factual basis to represent to her that at the time she had her test in January, that it was no longer mandatory? It's not clear what document that DHS counsel was relying on, if any. But if the petitioner had said, had explained, at the time that I took the premarital exam, I believed it to be required, that would be a reasonable explanation. She said that at the beginning, and that the government lawyer said that in the court's examination, that China made the premarital checkup voluntary in 2003, which is 12 months. So unless he was making that up, I assume we could assume that was in 2003. At some point, it became voluntary. All we have is the record, the statements in the record. We don't, we cannot speculate or make a decision based on extra record evidence or speculations as to what the DHS counsel is relying on. Under the statute, we can only review this case based on the record as it stands. So we don't know for certain what the DHS counsel was relying on or what month the change happened from mandatory to voluntary. What I ask you, suppose he knew, or she knew, that the DHS counsel knew that it became voluntary after the date that petitioner said she had this involuntary exam. What would be the consequence of that? Would it bother you? Would it bother you as a representative of the United States that a misleading question was asked that might have led to a finding that she was not credible? I can't speculate that it was a misleading question. I'm asking you to assume that. Would it bother you? Would you be troubled by the fact that this so-called testimony that wasn't credible may have been induced by a question that was either knowingly or deliberately misleading? It would be hard for me to believe that DHS was submitting deliberately misleading questions. So would you accept that at least there was a 2003? It's hard to believe. I'm sorry, Your Honor, I didn't understand your question. You said it was hard to believe that they would ask a misleading question. So are you conceding that this took place in 2003 at some point and became voluntary? Honestly, Your Honor, I cannot concede something I do not know. I have no idea when the record does not show it. So what I'm asking you, would you be troubled? This troubles me, and, you know, you are here representing a sovereign. I understand. And to look at somebody possibly deported based on a question that seems to me on its face to have misled her and to have accounted for this allegedly false statement might have been wrong. But for all we know, Your Honor, to be fair to the DHS counsel, this change could have happened January 1, 2003. We have no idea. Well, this is something that you could find out, couldn't you? I could try, but again, Your Honor. Well, you could try. Is this a secret? I'm sure it's not, Your Honor. I'm sure it's not, and I would be happy to submit a 28-J letter after the fact with any record evidence I can find. But the issue is that we are now. I don't want to feel profound record evidence to suggest that the change occurred making it voluntary after she had what she described as the involuntary test. And she doesn't start crying and being upset and ultimately changing her testimony until she hears what appears to me to be a question that was not accurate. If Your Honor does not believe that the agency reasonably relied on her answer because of DHS's question, there are still two other substantive inconsistencies and discrepancies in this record that permit this court to uphold the adverse credibility determination. So even if we set aside this testimony about her premarital checkup, her demeanor was still evasive, and the immigration judge is in the best position as the fact finder to consider the demeanor of the witness. The demeanor finding is not really an independent finding, is it? Presumably a big part of the demeanor finding was based on the fact that she started crying in response to this, having been caught in what the government suggested was a lie, but may not have been a lie if the government was wrong about the date that it became voluntary. So that seems to me to be derivative of the issue you were just talking about, isn't it? Well, but it is a separate finding, Your Honor, with all due respect to the agency, and there is great deference given to the agency's factual findings in credibility determinations. Under the statute, demeanor is listed explicitly as a finding. It's demeanor, candor, responsiveness, inherent plausibility of testimony, consistency between testimony... Yes, but what if the demeanor is based on what may be a totally misleading question? Aren't you troubled by that? Would you object to a remand to the board to consider whether or not this question was either carelessly or deliberately misleading, and what effect it might have on that decision? I would object to a remand because I believe that, based on the record, there is ample evidence that the agency relied upon in order to determine that this individual, in the totality of the circumstances, that this individual was not credible. And so, in this circumstances, both... This is one of the two, as I understand it, the two issues that I found. The third issue... I apologize, Your Honor, I didn't mean to interrupt, but because my time is running low, I did want to address the third issue, which is the discrepancy between her testimony and the notarial certificate that she provided as part of her purportedly corroborating documents. So there isn't just two issues here. The agency, in a three-page lengthy decision, the board expresses and analyzes every single fact, almost, except for one that the immigration judge raised, supporting the adverse credibility determination. Well, what if they understood that one of them, one of the two that they were relying on, was without a basis? That doesn't change the fact that this court's review can still uphold an adverse credibility. No, I'm not... You know, you're here representing the Attorney General and the United States, and the question is whether or not, you know, we should be concerned about a particular finding that might have been the result of a misleading question that was asked by the government attorney. Don't you care about that enough to consider a possible consent to a remand? A remand would only be required if there were absolutely no grounds, all the grounds that the agency relied on. I'm not asking you whether it would be required. There's such a thing as discretion in the enforcement of the immigration laws, as we know, goes on every single day at the southern border. So you have discretion here, and the question I am asking you is whether, as an exercise of the discretion, as a representative of the government or the Attorney General, whether you would object to a further development of the record with regard to whether this was a totally misleading question. I wouldn't... The other... Yeah, and I assume you wouldn't have to ask somebody. I'm sure I would, Your Honor, but usually remands are based very often on insufficient legal grounds, and that is simply what we do not have here. Is it your position, I mean, whether or not this change from mandatory to voluntary is, in one sense, a question of Chinese law? Is that a matter of which we can take judicial notice, or is it your view that the statute's limitation to the administrative record prevents us from doing so? Generally, it prevents the court from taking judicial notice. Another question of what is essentially foreign law. Not only that, Your Honor, it's also very easy to consider the agency's record as it stands. Had the petitioner had simply said, at the time that I had this premarital checkup, I believed it to be mandatory, that would have been a reasonable explanation. That is not what she did. She asked for the question to be repeated several times. She took several long pauses. Yes, but that was after he hit her with this argument that it becomes voluntary in 2003, and that obviously threw her off. But is throwing her off a reasonable – is that an explanation that is reasonable? I would submit that the fact finder can only – need only accept reasonable explanations. Had she simply explained that I had no idea the law had changed, I am telling you what I believed at the time, and I made decisions based on that, that would have been a reasonable explanation. But instead, the immigration judge, who is in the best position to consider the demeanor of these witnesses, and there's great deference given to his position, he saw that she was – he or she – I apologize, I don't remember the immigration judge's facts, but he or she saw that there was stalling, there was long pauses, and there was a clear intent to try and formulate a response to come up with a good, wise – She was asked an arguably misleading question. That's the point. But even if it was misleading, her response is what's important. Even if it was misleading, it's her response that's what's important, and that the immigration judge's credibility determination was based upon, not based upon the DHS questions. It was based upon the petitioner's response. So I think that ultimately is what is important. I think I'm over my time, so I will obviously defer to your honors if you have any other questions for me. It appears there are none, so thank you. Thank you. Mr. Trigo. Yes, Your Honor. You know, to go back to our initial actual response, was I don't know whether what you're saying is true, and this is on line 132, line 20. And then, you know, she goes on to explain what she believed, why it was necessary, and then it continued on, the government counsel as well as the judge not accepting her answer and caused her to become emotional. And there is no record supporting that when this change happened in 2003, but it's plausible that she didn't know about it because she had it done in the first month of January with this premarital checkup, or the law didn't exist. So this is the major crux of her decision denying the petitioner's claim, and it is compelling enough. Have you done any research into when the law changed? I have an article that says it was only in 2003 the change happened, so you can, you know. But when in 2003? Exactly. I'd have to actually go more in depth into that because I'm not finding the exact date of when it happened, but it said in 2003 they did change it. But it's plausible that the petitioner didn't know because she had it within the first 30 days, her checkup. So, you know, either she didn't know or it didn't exist. But either way, she says, I don't know what you're saying is true, and she responds. And that's plausible, and that's on page 132, line 20. So at that point, they don't accept it. They keep on going after her on the record and make her emotional, and that's where the demeanor comes from. So there's two major factors. They say she's inconsistent and her demeanor, and that was the crux of this whole denial. And, you know, it was the main part of her denial. That's why it's compelling to have her remanded back down for us to actually find out what date was the government actually looking at in 2003 when this law changed in China. And that would be compelling enough because she was misled at this point, and they didn't accept her answer. Thank you. All right. Thank you, and we thank both counsel for the arguments this morning and the cases submitted. Thank you, Your Honors.
judges: MILLER, COLLINS, Korman